

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-23-00175-CR

_____

CHAD NATHAN VEAZEY, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 124th District Court
Gregg County, Texas
Trial Court No. 48857-B

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

A Gregg County jury found Chad Nathan Veazey guilty of evading arrest or detention with a motor vehicle, a third-degree felony. *See* TEX. PENAL CODE ANN. § 38.04(b)(2). The jury assessed a sentence of ten years' imprisonment and a $598.00 fine. On appeal, Veazey argues that the trial court erred (1) by overruling his objection complaining of the State's alleged failure to give proper notice of its intent to seek an affirmative deadly weapon finding and (2) by overruling his oral motion for continuance to prepare a defense to the deadly weapon issue.

We find that the State's notice of intent to seek a deadly weapon finding was timely. We also find that, because a motion for continuance must be in writing and Veazey did not file any written motion, his oral motion for continuance did not preserve any error. As a result, we overrule Veazey's points of error. Even so, we modify the trial court's judgment to reflect an affirmative deadly weapon finding, and as modified, we affirm the judgment.

## I. The State's Notice of Intent to Seek a Deadly Weapon Finding Was Timely

In his first point, Veazey complains of the lack of proper notice of the State's intent to seek a deadly weapon finding. A defendant is entitled to written notice of the State's intent to seek an affirmative finding that a deadly weapon was used or exhibited during the commission of the charged offense. *Brooks v. State*, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993) (per curiam) (orig. proceeding). The notice requirement is "firmly rooted in fundamental precepts of due process and due course of law." *Ex parte Patterson*, 740 S.W.2d 766, 774 n.7 (Tex. Crim. App. 1987) (orig. proceeding), *overruled on other grounds by Ex parte Beck*, 769 S.W.2d 525, 528 (Tex. Crim. App. 1989) (orig. proceeding); *see Patterson v. State*, 138 S.W.3d 643, 647 (Tex.

App.—Dallas 2004, no pet.) (finding that written notice to seek a deadly weapon finding is required by Article I, Section 19, of the Texas Constitution). The notice need not be contained in the indictment, but it must be in writing. *Ex parte Patterson*, 740 S.W.2d at 775. Simply put, the defendant is "entitled to notice in some form that the use of a deadly weapon will be a fact issue at the time of prosecution." *Ex parte Beck*, 769 S.W.2d at 526.

### A. Factual Background

The indictment against Veazey alleged that he "intentionally fle[d] from William Ahumada, a person [Veazey] knew was a peace officer who was attempting lawfully to arrest or detain [Veazey]," while using a motor vehicle. The indictment did not allege that Veazey caused injury to anyone or used the motor vehicle as a deadly weapon.

Three days before trial, the State filed a notice "of the State's intention to seek, prove, and have submitted to the Court the issue of whether the Defendant used or exhibited a deadly weapon, to-wit: a motor vehicle[,] in the course of the commission of the alleged offense." At a pretrial hearing, Veazey objected to the State's notice on the ground that it did not specify how the motor vehicle was used as a deadly weapon and because "three days [notice was] not . . . enough." The trial court overruled that objection.

At trial, Garion Brooks testified that he spotted Veazey's vehicle "driving extremely erratically, weaving in and out of traffic and passing . . . [him] on a bridge doing about 80" in a sixty-mile-per-hour zone. Brooks testified that he called 9-1-1 after Veazey's vehicle pushed him "out of the way." On the recorded call with a 9-1-1 dispatcher, Brooks said Veazey was "driving all sorts of reckless. Doing 80 at least, flying past people on the bridge." When asked if

"people's lives were placed in danger" by Veazey's driving, Brooks answered, "Most definitely."

Ahumada, the responding police officer, testified that he pulled up behind Veazey, but he did not respond to the patrol-unit lights and sped up when Ahumada activated the sirens. The dash-camera footage from Ahumada's patrol unit showed Veazey's erratic, desperate escape. The recording demonstrated that Veazey led Ahumada on a high-speed chase, including through residential neighborhoods, without regard for any traffic signals or rules of the road. The jury saw Veazey's vehicle weave in and out of traffic, pushing several vehicles with only one lane of travel onto the shoulder. On several occasions, Veazey passed vehicles in his single lane of travel by driving in the opposite lane of travel. On one of those dangerous passes, Veazey narrowly missed a head-on collision with another vehicle. The recording also showed Veazey disregarding a row of vehicles stopped at a red light by passing them all at once, even though there was only one lane of travel.

After evaluating the evidence, the jury convicted Veazey of evading arrest with a motor vehicle, which it found to be a deadly weapon.[1]

### B.    Analysis

The record shows that the State provided written notice of its intent to seek a deadly weapon finding, but Veazey argues that the notice, given three days before trial, was untimely.[2]

---

[1]Veazey does not challenge the sufficiency of the evidence supporting the jury's deadly weapon finding.

[2]In some circumstances, the indictment itself "necessarily implies the use of a deadly weapon, which is 'anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.'" *Blount v. State*, 257 S.W.3d 712, 714 (Tex. Crim. App. 2008) (quoting TEX. PENAL CODE ANN. § 1.07(a)(17)(B)). This is not such a case. "[A] motor vehicle is not a deadly weapon *per se*." *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App.

"Neither the Texas Legislature nor the Texas Court of Criminal Appeals has indicated exactly when such notice must be given." *Patterson*, 138 S.W.3d at 647.

Veazey attempts to equate this case with *Hocutt v. State*, where the Fort Worth Court of Appeals found that a notice of intent to seek a deadly weapon finding faxed on the Friday before a Monday morning trial was "inadequate" "as a result of its timing and [the] inadequacy of its wording." *Hocutt v. State*, 927 S.W.2d 201, 203–04 (Tex. App.—Fort Worth 1996, pet. ref'd). Even so, our review of *Hocutt* shows that the case is easily distinguishable since the State's notice here clearly specified that Veazey's motor vehicle was the deadly weapon, but "the State's notice to [Hocutt's] defense counsel made no mention of the fact that the deadly weapon it sought to allege was the automobile." *Id.* at 203.

Moreover, *Hocutt* clarified "that the adequacy of such notice depends largely upon the specific facts of a given trial." *Id.* As a result, because there is no "definitive rule requiring a minimum period of time necessary for the State to provide adequate notice," the question of whether notice was timely is evaluated on a case-by-case basis. *Patterson*, 138 S.W.3d at 647.[3]

---

2014). Therefore, the offense of evading arrest can be completed using a motor vehicle that was not capable of causing death or serious bodily injury, as in a low-speed chase in the absence of any traffic. The indictment for evading arrest in this case, which contains no allegation of serious bodily injury or death, fails to supply notice that the State would seek a deadly weapon finding. *See Luken v. State*, 780 S.W.2d 264, 266 (Tex. Crim. App. 1989). Accordingly, separate written notice was required.

[3]While punishment-enhancement notices are similar to notices given for deadly weapon allegations, a bright-line rule on timeliness of a deadly weapon notice has not yet been expressed by the Texas Court of Criminal Appeals. In *Villescas v. State*, the Texas Court of Criminal Appeals held that the right to notice of the State's intent to use prior convictions as enhancements is constitutionally based and that due process does not require that notice of prior convictions be given before the trial on guilt begins. *Villescas v. State*, 189 S.W.3d 290, 293–94 (Tex. Crim. App. 2006); *see also Johnson v. State*, 815 S.W.2d 707, 715 (Tex. Crim. App. 1991) (Overstreet, J., concurring) (suggesting that notice is adequate if given any time prior to trial); *Nolasco v. State*, 970 S.W.2d 194, 197 (Tex. App.—Dallas 1998, no pet.).

In conducting such an analysis, we first note that this is not a case in which Veazey learned of the State's intent to seek a deadly weapon "only after all the evidence was in, both sides had closed, and the charge was read to the jury." *Ex parte Patterson*, 740 S.W.2d at 777. Defendants, like in *Ex parte Patterson*, are in effect "blindsided" because they have "no prior indication that the nature of the weapon used was to be a particular issue in the case." *Whately v. State*, 946 S.W.2d 73, 75 (Tex. Crim. App. 1997) (quoting *Ex parte Patterson*, 740 S.W.2d at 777).

Here, we find that Veazey was not blindsided by the State's notice, which identified the motor vehicle as the alleged deadly weapon. This is because the State timely provided Veazey with discovery in this case, which included Ahumada's dash-camera footage of the chase. The recording showed Veazey's dangerous high-speed chase, including a narrowly missed head-on collision. Considering the nature of the recording, which showed that Veazey's motor vehicle was used in a manner capable of causing serious bodily injury or death as he fled from Ahumada, Veazey should have known that the State would seek a deadly weapon finding.

Moreover, at the pretrial hearing, the trial court noted that, while the State had only provided notice three days before jury selection, the guilt/innocence "trial [would] not start until [the following day]" and "the punishment phase wouldn't be until probably [the] afternoon [of the following day] or [the next day]; that that is more than three days' notice."

Based on the unique circumstances of this case, we find that Veazey had timely notice of the State's intent to seek a deadly weapon finding. As a result, we overrule Veazey's first point of error.

6

**II.     Veazey's Oral Motion for Continuance Failed to Preserve Any Error**

"A criminal action may be continued on the written motion of . . . the defendant, upon sufficient cause shown[,] which cause shall be fully set forth in the motion." TEX. CODE CRIM. PROC. ANN. art. 29.03. Further, "[a]ll motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance." TEX. CODE CRIM. PROC. ANN. art. 29.08. The Texas Court of Criminal Appeals has interpreted these statutes to mean that, "if a party makes an unsworn oral motion for a continuance and the trial judge denies it, the party forfeits the right to complain about the judge's ruling on appeal." *Blackshear v. State*, 385 S.W.3d 589, 591 (Tex. Crim. App. 2012) (quoting *Anderson v. State*, 301 S.W.3d 276, 279 (Tex. Crim. App. 2009)). In other words, "an unsworn oral motion preserves nothing for appeal." *Id.*; *see Anderson v. State*, 301 S.W.3d 276, 278–79 (Tex. Crim. App. 2009) (finding that there is no due-process exception to the requirements of Articles 29.03 and 29.08).

Here, the clerk's record shows that Veazey did not file a written or sworn motion for continuance with the trial court. During his objection to the State's notice of intent to seek a deadly weapon finding, Veazey's counsel stated, "Our goal, Judge, is not to delay the case. . . . I don't want to file a motion for continuance. My client doesn't want a motion for continuance." Even so, when the trial court overruled Veazey's objection to the State's notice, Veazey orally moved for a continuance, which the trial court denied.

We find that Veazey's oral motion failed to preserve his complaint about the lack of a continuance. Because any error was unpreserved, we should not "address the merits of that

7

issue." *Blackshear*, 385 S.W.3d at 591 (quoting *Ford v. State*, 305 S.W.3d 530, 532 (Tex. Crim. App. 2009)).  We overrule Veazey's last point of error.

**III.    We Modify the Judgment to Include the Affirmative Deadly Weapon Finding**

"This Court has the power to correct and modify the judgment of the trial court for accuracy when the necessary data and information are part of the record." *Anthony v. State*, 531 S.W.3d 739, 743 (Tex. App.—Texarkana 2016, no pet.) (citing TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd)).  "The authority of an appellate court to reform incorrect judgments is not dependent upon the request of any party, nor does it turn on the question of whether a party has or has not objected in the trial court." *Id.* (quoting *Asberry*, 813 S.W.2d at 529–30).

The appellate record demonstrates that the jury made an affirmative deadly weapon finding.  During sentencing, the trial court stated, "[T]he jury, having found the use or exhibition of a deadly weapon, I now make an affirmative finding of the use or exhibition of the deadly weapon."  Even so, under the heading "Findings on Deadly Weapon," the judgment contains the notation "N/A."  Because that notation does not properly reflect the jury's affirmative deadly weapon finding, which was expressly adopted by the trial court, we must modify the trial court's judgment.

## IV.    Conclusion

We modify the trial court's judgment by deleting the notation "N/A" under the heading "<u>Findings on Deadly Weapon</u>" and replace it with the notation "Yes" in order to properly reflect the affirmative deadly weapon finding.  As modified, we affirm the trial court's judgment.


Charles van Cleef
Justice

Date Submitted:     February 1, 2024
Date Decided:       March 25, 2024

Do Not Publish